**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Eduardo Penaloza-Romero,<br><br>Defendant. | Case No. 14-cr-289(8) (SRN/JSM)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Allen A. Slaughter, Jr., United States Attorney's Office, 316 North Robert Street, Suite 404, St. Paul, Minnesota 55101, for Plaintiff.

Robert M. Paule, Robert M. Paule, P.A., 920 Second Avenue South, Suite 975, Minneapolis, Minnesota 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.   INTRODUCTION

This matter is before the Court on Defendant Eduardo Penaloza-Romero's Objections to the May 5th, 2015 Report and Recommendation [Doc. No. 272].  In the Report and Recommendation [Doc. No. 260] ("R&R"), U.S. Magistrate Judge Janie S. Mayeron recommended that Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants [Doc. No. 146] be denied.  For the following reasons, the Court overrules Defendant's Objections and adopts the Report and Recommendation in its entirety.

1

## II.     BACKGROUND

The R&R thoroughly sets forth the factual and procedural background of this case,[1] and the Court incorporates the R&R by reference and recites facts only to the extent necessary to rule on Defendant's Objections. On September 23, 2014, the Government filed a superseding indictment against several individuals, including Defendant, who are alleged to be involved in a narcotics conspiracy. (R&R at 1.) That same day, the Government obtained warrants to search Defendant's residence and business. (Id. at 3.) Both warrant applications were accompanied by an affidavit from Special Agent Travis Hamblen, which stated, among other things, the following:

- Special Agent Hamblen has been a federal law enforcement officer since 1996 and has been assigned to the Drug Enforcement Administration as a Task Force Agent for the past five years. (Id.)

- Law enforcement has been conducting a controlled substance distribution investigation of the Penaloza Drug Trafficking Organization ("Penaloza DTO") since August 2011. (Id.) The Penaloza DTO is comprised of members of the Penaloza family and is responsible for the large-scale distribution of methamphetamine, cocaine, and marijuana. (Id. at 3–4.)

- At the time of the investigation, law enforcement had seized approximately $600,000 in U.S. currency, forty-seven pounds of methamphetamine, ten pounds of marijuana, and a handgun. (Id. at 4.) Law enforcement had also conducted nine controlled substance purchases from Penaloza DTO associates. (Id.)

- Defendant is a known leader within the Penaloza DTO who used his automotive repair business as a front for narcotics trafficking. (Id.) Over a period of a year-and-a-half, including on June 26, 2014, the Government repeatedly observed that the business was used to store or transfer narcotics. (Id. at 4–6.)

---

[1]     Defendant agrees, stating, "The Report and Recommendation itself accurately states the relevant facts and the arguments made by counsel on behalf of [Defendant]." (Def.'s Objs. at 1.) Accordingly, the Court will cite directly to the R&R in summarizing the factual and procedural background.

- On July 1, 2014, law enforcement conducted surveillance of two members of the Penaloza family at Defendant's residence. (Id. at 6.) Both individuals left the residence carrying envelopes and were later seen counting money believed to have been in the envelopes. (Id.) The individuals then drove to another apartment and were seen transferring a box to another individual. (Id.) It was later determined that the box contained bundles of marijuana. (Id.)

- In late-July and early-August 2014, law enforcement intercepted phone calls between Defendant and an individual known to be a source of methamphetamine for the Penaloza DTO, during which arrangements were made for the shipment of methamphetamine to Minnesota. (Id. at 6–7.) After Defendant was informed that the shipment would soon arrive and was asked for a delivery address, law enforcement intercepted a text message directing the delivery to Defendant's business. (Id.) Ten pounds of methamphetamine were subsequently seized from the delivery vehicle during a traffic stop. (Id. at 7.)

- In September 2014, law enforcement intercepted phone calls in which Defendant inquired as to the availability of methamphetamine, cocaine, and marijuana. (Id.) He also indicated that he had customers who were waiting for marijuana and discussed his intent to acquire the marijuana. (Id. at 8.)

- Special Agent Hamblen believed that Defendant would store the marijuana at his business and that Defendant would maintain records related to the distribution of the marijuana at his residence. (Id.)

- Special Agent Hamblen is familiar with typical distribution and trafficking methods and methods used by dealers to conceal controlled substances and illegal proceeds. (Id.) He believes that it is common for drug traffickers to maintain at their residence: electronic devices and documents related to the transportation, purchase, and distribution of controlled substances; evidence pertaining to drug proceeds, such as cash and bank statements; documents; photographs; addresses; and indicia of ownership of the residence. (Id.)

- Special Agent Hamblen believes that unexplained wealth is probative evidence of trafficking of controlled substances and, therefore, financial documents can show evidence of narcotics trafficking. (Id. at 8–9.) These documents may also allow law enforcement to estimate an individual's earnings from trafficking. (Id. at 9.) Special Agent Hamblen believes that individuals often maintain financial documents for a period of years. (Id.)

- In Special Agent Hamblen's previous experience, the items sought by the warrants had been recovered in a subject's residence, business, or both, and individuals

>involved in illegal activities often possessed the sought-after documents for years after the underlying activity was completed.  (Id.)

The warrants were executed on September 24, 2014, and the search of Defendant's residence resulted in the seizure of eight cell phones, four computers, a disposable camera, documents related to indicia of residency, financial records, and receipts.  (Id. at 3, 10).

That same day, Special Agent Hamblen obtained two additional warrants to search the business and residence for drugs, firearms, and packaging materials for drugs and drug proceeds.  (Id.)  His affidavit accompanying the application for the warrant to re-search the residence stated that, during the first search, law enforcement had located:  a semi-automatic pistol, two magazines, and thirty-six bullets; a substance that tested positive for methamphetamine; and a thermos of methamphetamine.  (Id.)  These items had not been described in the original search warrant, and law enforcement believed they were evidence or contraband related to the Penaloza DTO conspiracy.  (Id.)  During the second search, law enforcement seized the pistol, three magazines, thirty-six bullets, two drug scales with suspected drug residue, and a cooler and cooking pot containing suspected methamphetamine.  (Id. at 10–11.)

Meanwhile, in July and August 2014, the Government submitted Applications for the Interception of Wire and Electronic Communications for two telephones.  (Id. at 22.)  According to the Government, the phones were known or alleged to be used by Defendant in connection with drug trafficking activity.  (Id.)  Special Agent Hamblen submitted affidavits in support of the applications.  (Id. at 22–23.)  Both interceptions

were authorized. (Id. at 23–24.) And, on October 10, 2014, the Government obtained warrants to conduct a forensic examination of the electronic devices that had been seized from Defendant's residence and business. (Id. at 11–12.) The application for this warrant also was supported by an affidavit from Special Agent Hamblen. (Id. at 11.)

On February 23, 2015, Defendant moved to suppress evidence seized pursuant to the search warrants for his residence and business, evidence seized pursuant to the search warrants for the electronic devices, and evidence obtained as a result of the wiretap investigations. (See Def.'s Mot. to Suppress Evid. Seized Pursuant to Search Warrants [Doc. No. 146].) As for the search of Defendant's residence, Defendant argued that the affidavits supporting the applications for the warrants contain insufficient allegations to establish a nexus between the residence and the alleged narcotics activity. (Def.'s Br. in Supp. of Mots. to Suppress Evid. [Doc. No. 221] at 1.) Defendant asserted that the only specific event described therein related to the residence occurred over two-and-a-half months prior to the warrant being submitted to the Court. (Id. at 2.) Defendant also argued that there was insufficient probable cause to support the searches of his business and the electronic devices, and that the Government failed to demonstrate the requisite necessity for conducting the wiretap investigations. (Id. at 2–4.)

The Magistrate Judge issued an R&R on May 5, 2015, recommending that Defendant's Motion to Suppress be denied. (R&R at 51.) The Magistrate Judge first determined that Special Agent Hamblen's affidavits provided probable cause to search Defendant's residence and business because they "set forth in great detail the evidence garnered over the course of a long investigation, which led the Government to conclude

5

that [Defendant] was engaged in drug trafficking and that it was highly likely that the [sought-after items] would be located at his residence and business." (Id. at 17.) As to the residence, in particular, the Magistrate Judge relied on the description of the incident during which two individuals exited Defendant's residence with envelopes and then transferred a box of marijuana, as well as Special Agent Hamblen's belief that Defendant would maintain records of his activities at his residence. (Id. at 17–18.) Second, the Magistrate Judge determined that the search of Defendant's residence was not stale because the Penaloza DTO's activities had been ongoing for several years and had implicated Defendant's residence on more than one occasion, including on September 8, 2014. (Id. at 18.) Third, the Magistrate Judge concluded that the affidavits in support of the warrants to search the business and electronic devices provided detailed averments in support of the likelihood of discovering evidence of illegal activity therein. (Id. at 19–20.) Fourth, the Magistrate Judge found that, even if the warrants were not supported by probable cause, the evidence would be admissible because the executing officer's good-faith reliance on the warrants was objectively reasonable. (Id. at 20 n.12.) Finally, the Magistrate Judge concluded that the affidavits in support of the applications for the wiretap warrants adequately described why traditional investigation techniques were insufficient to obtain relevant information. (Id. at 45–50.)

## III. DISCUSSION

### A. Standard of Review

The district court reviews de novo those portions of the R&R to which an objection is made, and "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); accord D. Minn. LR 72.2(b).  Pursuant to Local Rule 72.2, objections must be "specific." D. Minn. LR 72.2(b)(1).

### B.    Defendant's Objections

Although Defendant, in his Objections, generally refers this Court to "his prior assertions and pleadings regarding the Motion to Suppress," his only specific "objection" is that the Court "consider his arguments regarding the search of his residence, particularly the nexus requirements and the staleness aspects of the Affidavit in support of the search warrant."  (Def.'s Objs. at 1.)  Accordingly, the Court will address only those two issues:  the nexus requirement and staleness.

#### 1.    Nexus requirement

Defendant's first objection to the R&R is essentially that the search warrant for Defendant's residence was not supported by probable cause because the supporting affidavit does not establish a nexus between the residence and the items sought through the warrant.  The Eighth Circuit has summarized the standard for evaluating the existence of probable cause in this context as follows:

> If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established.  Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge should be paid great deference by reviewing courts. . . . The affidavit for a search warrant should be examined using a common sense approach, and not a hypertechnical one.

United States v. Hudspeth, 525 F.3d 667, 674 (8th Cir. 2008) (internal citations and quotation marks omitted).  Applying these standards in United States v. Luloff, the Eighth Circuit determined that:

> information in [an] affidavit showing that [the defendant] had engaged in a continuous course of drug trafficking . . . , along with [an officer's] averment based upon his experience that drug traffickers often keep in their residences records of their illicit activity, large amounts of cash, assets purchased with the proceeds of drug transactions, and guns to protect their drugs and cash, provided the issuing judge with a substantial basis for finding probable cause to search [the defendant's] residence.

15 F.3d 763, 768 (8th Cir. 1994).

Even if a search warrant is not supported by probable cause, however, a court may deny a suppression motion if the good-faith exception articulated in United States v. Leon, 468 U.S. 897 (1984), applies.  Hudspeth, 525 F.3d at 676.  "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant."  Id. (citation and internal quotation marks omitted).  An officer's reliance is unreasonable, and the good-faith exception is lost:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

United States v. Proell, 485 F.3d 427, 431 (8th Cir. 2007) (quoting Leon, 468 U.S. at 923).

Here, the affidavits of Special Agent Hamblen submitted in support of the applications for both the September 23 and 24 warrants—taken as a whole—provided the issuing judge with a substantial basis for finding probable cause to search Defendant's residence.  The affidavit in support of the September 23 warrant application states that investigation of the Penaloza DTO's large-scale distribution of narcotics had been ongoing since August 2011; that Defendant is a known leader within the Penaloza DTO; that two members of the Penaloza family were observed leaving Defendant's residence on July 1, 2014 carrying envelopes believed to contain money and then transporting a box containing marijuana; that Special Agent Hamblen believed Defendant would maintain records related to the distribution of the marijuana at his residence; and that, in Special Agent Hamblen's experience, it is common for drug traffickers to maintain the sought-after evidence (i.e., electronic devices and documents related to the transportation, purchase, and distribution of controlled substances; evidence pertaining to drug proceeds, such as cash and bank statements; documents; photographs; addresses; and indicia of ownership of the residence) at their residence for long periods of time.  Like the affidavit in Luloff, this affidavit sets forth sufficient facts to lead a prudent person to believe that there was a fair probability the sought-after items would be found at Defendant's residence.  As for the affidavit submitted in support of the September 24 warrant application, there can be no question that a nexus existed between the sought-after items

9

and Defendant's residence because the affidavit stated that the listed items had been observed at the residence during the first search.

Even if the warrants at issue were not supported by probable cause, the Leon good-faith exception would apply to prevent suppression of the seized evidence. Because Defendant does not dispute the Magistrate Judge's ruling to this effect, this Court need not analyze the issue in depth. However, the Court notes that there are no allegations that the affidavits contain false statements or that the issuing judge wholly abandoned his or her judicial role in issuing the warrant. Moreover, as discussed above, the affidavits contain detailed information about the alleged criminal activity taking place at the residence and the officer's beliefs based on his substantial experience. Therefore, the affidavits were not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or so facially deficient that no police officer could reasonably presume the warrants to be valid. Accordingly, Defendant's objection as to the nexus requirement of probable cause is overruled.

    **2.**    **Staleness**

Defendant's "staleness" argument is equally without merit. "'[T]he facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past.'" United States v. Palega, 556 F.3d 709, 715 (8th Cir. 2009) (quoting United States v. Wagner, 989 F.2d 69, 75 (2d Cir. 1993)). However, there is no fixed time period after which information becomes stale. United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998).

Rather, the court should consider the circumstances of the case, including the nature of the criminal activity involved and the kind of property sought. United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005). For example, "'in investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.'" Formaro, 152 F.3d at 771 (quoting United States v. Ortiz, 143 F.3d 728, 732–33 (2d Cir. 1998)); see id. (stating that the passage of time is less significant when ongoing criminal activity is suspected).

Here, the facts averred in the affidavit supporting the September 23 warrant may refer back to August 2011, but they also refer to activities at Defendant's residence as recent as July 1, 2014—less than three months prior to issuance of the warrant and the subsequent search. In light of the ongoing nature of the alleged illicit activity, a three-month interval does not make the affidavit supporting the September 23 warrant stale. And, there can be no suggestion that the affidavit supporting the September 24 warrant application was stale because the sought-after items had been observed at Defendant's residence the same day that the affidavit and application were submitted. Accordingly, Defendant's objection as to staleness is overruled.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Objections to the May 5th, 2015 Report and Recommendation [Doc. No. 272] are **OVERRULED**;

2. The Magistrate Judge's Report and Recommendation [Doc. No. 260] is **ADOPTED**; and

3. Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants [Doc. No. 146] is **DENIED**.

Dated:  June 15, 2015                                      s/Susan Richard Nelson
                                                           SUSAN RICHARD NELSON
                                                           United States District Judge